IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARQUIS WATKINS, | |
| Plaintiff, | |
| v. | No. 20-cv-05072 |
| SPECIAL AGENT EDWARD GOEWEY, Individually, and the METROPOLITAN AREA NARCOTICS SQUAD, | Judge John F. Kness |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendant Edward Goewey, a law enforcement agent with the Metropolitan Area Narcotics Squad (MANS), purchased drugs undercover from a dealer nicknamed "Buzzy." To determine Buzzy's real name, Goewey had a fellow officer, Deputy Miller, perform a traffic stop to ask Buzzy for identifying information. Buzzy did not have a driver's license with him, but he provided Deputy Miller with Plaintiff Marquis Watkins's name. Goewey and Deputy Miller retrieved Watkins's driver's license photo from a computer database, and both positively identified Buzzy as Watkins from the photo. Goewey subsequently signed a criminal complaint charging Watkins with four counts of unlawful delivery of a controlled substance. Watkins was arrested but eventually acquitted at trial on a directed verdict.

In his Amended Complaint, Watkins alleges that this was a case of mistaken

identity: Buzzy and Watkins, both black males between the age of 30 and 40 years old, looked similar enough to fool Goewey and Deputy Miller into making a false identification. Watkins brings two counts against Goewey for false arrest and malicious prosecution, alleging that Goewey lacked probable cause to believe Watkins was Buzzy because the identification was flawed. Watkins also seeks indemnification from Defendant MANS. Defendants now move for summary judgment, arguing that Goewey had probable cause to arrest Watkins or, in the alternative, is entitled to qualified immunity.

As explained below, although Watkins was ultimately acquitted, the identification (even if erroneous) was sufficient to provide Goewey with probable cause to believe that Watkins was the drug dealer nicknamed Buzzy. Goewey is also entitled to qualified immunity because Watkins has failed to identify clearly established law showing that probable cause was lacking under similar circumstances. Defendants' motion for summary judgment (Dkt. 44) must therefore be granted.

**I.  BACKGROUND**

In January 2018, Defendant Edward Goewey, a MANS agent, received a tip form an anonymous informant that a person nicknamed "Buzzy" was selling heroin in the Mokena-Frankfort area of Will County, Illinois. (Dkt. 58 ¶ 6.) The informant did not provide Buzzy's real name but supplied Goewey with Buzzy's phone number. (*Id.*) Goewey called the number and arranged undercover heroin purchases from Buzzy at a Speedway gas station in Frankfort on three different days in 2018:

2

January 25, February 6, and February 15. (*Id.* ¶¶ 9–10, 15–16, 18, 28.) All three purchases occurred in the parking lot of the Speedway while Goewey sat in the front passenger seat or stood outside the passenger window of Buzzy's car, a 2014 Chevrolet Cruze. (*Id.* ¶¶ 8, 10–11, 14, 16–17, 28–30.) Buzzy's face was unobstructed, and the transactions were performed during the day. (*Id.*) Goewey described Buzzy as a black male with a slight build around 30 to 40 years old. (*Id.* ¶¶ 11–12.)

To figure out Buzzy's real name, Goewey, other MANS agents, and Cook County Sheriff's Deputy Christine Miller and Sergeant Christopher Imhof concocted a plan to conduct a pretextual traffic stop after the February 15 sale. (*Id.* ¶¶ 19–22.) MANS agents continuously and uninterruptedly followed Buzzy as he departed the Speedway and notified Deputy Miller and Sgt. Imhoff via radio that the vehicle was entering the interstate. (*Id.* ¶ 31.) The MANS agents provided Miller and Imhoff with the color, make, model, and lane the suspect vehicle was traveling in.[1] (*Id.* ¶ 32.) Deputy Miller, who was waiting on the interstate shoulder, stopped the vehicle for speeding and changing lanes without signaling. (*Id.* ¶ 33.) Sgt. Imhoff pulled behind Deputy Miller's squad car for support. (*Id.* ¶ 35.) Deputy Miller approached the driver of the vehicle, Buzzy, and requested his driver's license, proof of insurance, and registration. (*Id.* ¶ 37.) Buzzy did not have any identification but told Deputy Miller

---

[1] The parties dispute, and the record contains conflicting evidence, whether Deputy Miller and Sgt. Imhoff were also provided with the vehicle's license plate number. Deputy Miller testified that the MANS agents radioed only the make and model of the vehicle but not the license plate. (Dkt. 45-6 at 19:1-21, 44:1-20.) Sgt. Imhoff, however, testified that he was "pretty sure" the license plate number was provided. (Dkt. 45-7 at 20:15-21.)

3

that his name was "Marquis Watkins" and that his birthday was in 1987.[2] (*Id.* ¶ 38.) Deputy Miller returned to her squad car to obtain Watkins's driver's license photo on the in-squad computer. (*Id.* ¶ 39.) Deputy Miller concluded that Buzzy and Watkins were the same person and released him without a citation, written warning, or charges. (*Id.* ¶ 41.)

While Deputy Miller conducted the traffic stop, Goewey monitored Deputy Miller's radio communications and overheard Buzzy's identification as Marquis Watkins (*Id.* ¶ 44.) Goewey conducted his own computer search and identified Buzzy as Watkins using his driver's license photo. (*Id.* ¶ 45.) Watkins, who is a 34-year-old black male, matched Goewey's description of Buzzy as a black male between 30 and 40 years old. (*Id.* ¶¶ 1, 12.) After making this identification, Goewey arranged an additional heroin purchase on February 23, 2018. (*Id.* ¶ 51.) This time, Buzzy (or who Goewey believed to be Watkins) arrived in a 2018 Kia, not the 2014 Chevy Cruze used during the first three transactions.[3] (Dkt. 61 ¶ 23.) This fourth and final purchase occurred in Goewey's car, with Goewey sitting in the driver's seat and Buzzy in the front passenger seat. (Dkt. 58 ¶ 53.) Goewey and Buzzy attempted to arrange an

---

[2] The driver provided Deputy Miller with a full birth date that included a month and day, but the parties have included only the year in their filings to comply with Rule 5.2(a)(2) of the Federal Rules of Civil Procedure.

[3] The 2014 Chevy Cruze used by Buzzy during the first three narcotics transactions was registered to a woman named Jasmine Murphy. (Dkt. 61 ¶ 12.) During his investigation, Goewey obtained a court order to place a tracking device on Murphy's Chevy Cruze. The device, however, did not result in any investigative leads. (*Id.* ¶ 14.) The 2018 Kia used by Buzzy during the fourth and final transaction was owned by Armon Hubbard. (*Id.* ¶ 24.) During Goewey's investigation, Goewey never contacted Murphy or Hubbard nor directed any other law enforcement officer to investigate these individuals. (*Id.* ¶¶ 13, 25–26.)

4

additional narcotics transaction, but the deal fell through. (*Id.* ¶¶ 56–57.)

Goewey signed a criminal complaint against Watkins on May 16, 2018, and a warrant was issued for Watkins's arrest on May 21, 2018. (*Id.* ¶¶ 62–63.) On August 8, 2018, a Will County grand jury indicted Watkins on four counts of unlawful delivery of a controlled substance. (*Id.* ¶ 64.) Watkins was arrested on September 7, 2018 by Chicago Police officers for an unrelated illegal street gambling charge. (*Id.* ¶ 65.) Officers discovered Watkins's outstanding Will County warrant and detained him pretrial until he was released on July 31, 2019, after Judge Goodman of the Will County Circuit Court granted Watkins's motion for a directed verdict on all charges for unlawful delivery of a controlled substance. (*Id.* ¶¶ 65–67; Dkt. 61 ¶ 30.)

Watkins then filed suit against Goewey and MANS under 42 U.S.C. § 1983, asserting claims for false arrest (Count I) and malicious prosecution (Count II).[4] (Dkt. 11 ¶¶ 1–24.) Watkins also brings an indemnification claim (Count III) against MANS, Goewey's employer.[5] (*Id.* ¶¶ 25–27.) According to Watkins, this is a case of mistaken

---

[4] In his Amended Complaint, Watkins describes Count II as "Malicious Prosecution Under *Manual*," seemingly referring the Seventh Circuit's decision in *Manuel v. City of Joliet, Illinois*, 903 F.3d 667 (7th Cir. 2018). *Manuel* explained that there is "no such thing as a constitutional right not to be prosecuted without probable cause," but there is a constitutional right under the Fourth Amendment "not to be held in custody without probable cause." *Id.* at 670 (cleaned up). Goewey thus argues that Watkins mischaracterizes Count II as "malicious prosecution" when it is really a "pretrial detention claim [] governed by the Fourth Amendment." (Dkt. 56 at 5 n.2.) Regardless of how Watkins characterizes Count II, *Manuel* makes clear that the key issue under the Fourth Amendment is whether probable cause exists. This is also true for malicious prosecution claims under state law. *See Vaughn v. Chapman*, 662 F. App'x 464, 466–67 (7th Cir. 2016) (Claims "of malicious prosecution, whether we consider them under federal or state law," are defeated by "the existence of probable cause.").

[5] Watkins originally also sought indemnification from the Will County Sheriff's Department. (*See* Dkt. 11 at 4.) But the Court previously granted Watkins's motion to

5

identity: Watkins is not the individual nicknamed Buzzy that conducted the four narcotics transactions with Goewey, and Goewey's flawed plan to identify Buzzy via a pretextual traffic stop caused Watkins to be unlawfully arrested, prosecuted, and jailed for approximately ten months before he was acquitted. (Dkt. 11; Dkt. 60 at 2–3.) Defendants move for summary judgment, arguing that (1) probable cause existed to arrest Watkins; and (2) Goewey is entitled to qualified immunity because any mistake regarding the existence of probable cause was objectively reasonable. (Dkt. 56 at 5.)

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)

---

voluntarily dismiss the Will County Sheriff's Department from this case under Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Dkt. 25.)

(quotations omitted). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

The existence of probable cause "is a complete defense to [] false arrest and malicious prosecution actions under both Illinois and federal law." *Penn v. Chicago St. Univ.*, 162 F. Supp. 2d 968, 975 (N.D. Ill. 2001).[6] But "qualified immunity affords an added layer of protection by shielding officers from suit for damages if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (cleaned up). Because Goewey asserts qualified immunity, Watkins's burden is two-fold: he must show that (1) probable cause did not exist; and (2) no reasonable officer could have believed that probable cause existed. *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012).

### A. Goewey Had Probable Cause to Arrest Watkins

Probable cause exists "if an officer reasonably believes, in light of the facts known to her at the time, that a suspect had committed or was committing an offense." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). Probable cause "is

---

[6] If facts "sufficient to create probable cause are undisputed, probable cause is a question of law" properly determined on a motion for summary judgment." *Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 963 (N.D. Ill. 2014) (quoting *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997)). Even when facts are in dispute, summary judgment may be granted if, after resolving the disputes in favor of Watkins (as the party opposing summary judgment), probable cause still exists. *Id.*; *Penn*, 162 F. Supp. 2d at 975–76.

only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). It does not require "evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (quoting *United States v. Moore*, 215 F.3d 681, 686 (7th Cir. 2000)). Because probable cause is an objective standard, measured at the time of the arrest, the "fact that [the defendant] was eventually acquitted . . . does not negate the existence of probable cause at the relevant time." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010); *see also Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) (probable cause "does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.") (cleaned up).

Watkins does not dispute that there was probable cause to arrest Buzzy, the drug dealer, but contends that Goewey lacked probable cause to believe that Watkins was Buzzy. (Dkt. 60 at 3.) Watkins's principal argument is that a reasonable officer would have recognized the deficiencies in the identification procedures utilized by Goewey, Deputy Miller, and the other MANS agents.[7] (*Id.*) Accordingly, the Court

---

[7] Watkins also complains that the investigation began with a tip from an unidentified informant of questionable reliability; Goewey did not confirm that the drug dealer went by Buzzy when purchasing the drugs; the Chevy Cruze driven by Buzzy during the first three drug sales and stopped by Deputy Miller was registered to Jasmine Murphy, but Goewey did not contact Ms. Murphy; and Goewey did not acquire any investigative leads after placing a tracking device on Ms. Murphy's vehicle. (*Id.*) These complaints, however, are irrelevant to the question of whether Goewey had probable cause to believe that Watkins was the drug dealer supposedly nicknamed Buzzy. First, the informant proved reliable because Goewey was able to purchase heroin after calling the provided telephone number. And whether the drug dealer went by "Buzzy," a nickname, is immaterial to whether Watkins was the drug

8

must determine whether Goewey reasonably believed, based on the identification procedures, that Watkins was Buzzy.

These facts surrounding Watkins's identification are undisputed: Goewey purchased heroin four times in one month from a black male nicknamed Buzzy between the age of 30 and 40 years old; each purchase was made during the day at arm's length, which provided Goewey with a clear view of Buzzy's face; MANS agents continuously and uninterruptedly followed Buzzy after the third drug sale and provided Deputy Miller with the color, make, model, and direction of travel of the vehicle; Deputy Miller stopped the suspect vehicle and identified the driver as Plaintiff Marquis Watkins, a 34-year-old black male, by searching for his driver's license photo on the cruiser computer; and Goewey listened via radio to Deputy Miller's identification of Watkins and then made his own positive identification using Watkins's driver's license photo. (Dkt. 56 at 7–8.)

These facts establish probable cause. Before signing the criminal complaint, Goewey personally identified Watkins as Buzzy. Goewey also relied on Deputy Miller's traffic stop identification. Two credible identifications are more than sufficient to establish probable cause. *Woods*, 234 F.3d at 996 (The Seventh Circuit

---

dealer. Moreover, Goewey had no duty to investigate Ms. Murphy or call-off the investigation into Watkins when the tracking device turned up no leads. *See Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (There is "no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established . . . ."). As will be explained, Goewey "received information from a reasonably credible . . . eyewitness sufficient to establish probable cause." *Woods*, 234 F.3d at 997. Accordingly, he had "no constitutional obligation to conduct any further investigation" even "if sound police technique would have required such further investigation." *Id.*

9

has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."); *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) ("Identification by a single eyewitness who lacks an apparent grudge against the accused person supplies probable cause for arrest.").

Goewey's identification was credible because it occurred after three face-to-face transactions with Buzzy in broad daylight. *See Gregory-Bey v. Hanks*, 332 F.3d 1036, 1050 (7th Cir. 2003) (reliability of eyewitness identification increases with "the opportunity of the witness to view the criminal"); *United States v. Clark*, 989 F.2d 1490, 1495 (7th Cir. 1993) (identification was reliable because witness saw robber for two minutes in broad daylight). The third purchase occurred the same day that Goewey made his identification, meaning Buzzy's face was fresh in Goewey's memory.[8] *See United States v. Funches*, 84 F.3d 249, 255 (7th Cir. 1996) (show-up identification was reliable because it occurred "only 4 hours after the robbery."). Goewey then arranged a fourth drug purchase—after the identification but before the criminal complaint was signed—allowing Goewey to verify that Buzzy was the person in Watkins's driver's license photo.

---

[8] The parties dispute when exactly Goewey identified Watkins. Defendants contend that Goewey identified Watkins "around the time Deputy Miller ran her search." (Dkt. 62 at 2; Dkt. 61 ¶ 18). Watkins, however, maintains that Goewey did not conduct his identification until he returned to the police station. (Dkt. 60 at 4–5; Dkt. 61 ¶ 18.) Goewey's deposition testimony is ambiguous on this issue: he first testified that he viewed Watkins's driver's license photo when he got back to the station (Dkt. 45-3 at 22), but then says he looked at Watkins's picture right after Deputy Miller made her identification (*Id.* at 33.) Even if Goewey performed his identification at the station, the parties and the record do not clarify how much time this adds between Goewey's last encounter with Buzzy and his identification. Moreover, it is undisputed that Goewey performed his identification the same day he purchased drugs from Buzzy. This factual dispute thus does not materially alter the reliability of Goewey's identification.

Deputy Miller's identification, overheard by Goewey on the radio, provides additional evidence of probable cause. *See United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005).[9] The MANS agents continuously and uninterruptedly followed Buzzy's vehicle to ensure that Deputy Miller stopped the correct vehicle.[10] Deputy Miller approached the vehicle in broad daylight, talked to Buzzy face-to-face, and returned to her cruiser to verify the driver's identity using Watkins's driver's license photo—a ubiquitous law enforcement procedure during a traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 349 (2015) (An "officer's mission during a traffic stop typically includes checking the driver's license."). There is nothing in the record suggesting that Goewey had reason to doubt Deputy Miller's ability to successfully

---

[9] Watkins argues that the "collective knowledge" doctrine cannot be used to impute Deputy Miller's identification to Goewey. (Dkt. 60 at 7.) The collective knowledge doctrine allows an officer "to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts" that constitute probable cause. *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). For example, the doctrine applied when "DEA agents asked local law enforcement officers to stop a specifically-identified vehicle, and the local officers had no knowledge of the facts underlying the DEA's probable cause." *Id.* at 253. Goewey does not need to rely on this doctrine, however, because he had actual knowledge regarding Deputy Miller's positive identification from listening to the radio.

[10] Watkins insinuates that Deputy Miller possibly stopped the wrong silver 2014 Chevy Cruze because the MANS agents did not provide Deputy Miller with the license plate number. (*Id.* at 4.) As mentioned previously, whether Deputy Miller was given the license plate number is a disputed fact. Assuming, however, Watkins's version of events, any chance for error—from Goewey's perspective—caused by failing to provide the license plate number was small. Goewey "knew, understood, and believed that the other undercover MANS agents involved in the operation continuously and uninterruptedly followed Buzzy's vehicle" and were in constant radio communication with Deputy Miller while she performed the traffic stop. (Dkt. 45-4 ¶ 8.) The agents thus could have alerted Deputy Miller if she stopped the wrong vehicle. Moreover, there is no dispute that the stopped vehicle was the same color, make, and model as Buzzy's vehicle, and the driver was also a 30- to 40-year-old black male. (Dkt. 58 ¶¶ 32, 34, 38–40.) Accordingly, any failure to provide the license plate number does not materially alter the probable cause analysis.

11

perform the identification.

Watkins, however, attacks the reliability of the identifications, analogizing them to an improper "piecemeal 'show-up.'" (Dkt. 60 at 4–5.) A "show-up" is a "police procedure in which a suspect is shown singly to a witness for identification, rather than as part of a lineup." *Showup*, Black's Law Dictionary (11th ed. 2019). A show-up is generally seen as less reliable than a "lineup that presents the witness with a choice between suspects." *United States v. Sleet*, 54 F.3d 303, 309 (7th Cir. 1995) (citation omitted). Watkins argues that Goewey's identification was akin to a "show-up" (and thus unreliable) because Goewey "only viewed one suspect and did so by photograph." (*Id.* at 4–5.) And it was "piecemeal" (meaning even less reliable) because Goewey viewed Watkins's photo only after Deputy Miller's identification of Buzzy.[11] (*Id.* at 5.)

As an initial matter, Watkins's characterization of the identifications as a single, "piecemeal" show-up is misleading. Goewey's show-up was prompted by Deputy Miller's identification. But Deputy Miller and Goewey individually compared

---

[11] Goewey correctly notes that "show-ups" are typically challenged under the Due Process Clause, not the Fourth Amendment. (Dkt. 62 at 4–5.) Due process prohibits a show-up from being used as evidence at trial if it is unduly suggestive and unreliable based on the totality of circumstances. *Funches*, 84 F.3d at 253. This prohibition, however, concerns "the admissibility of evidence at criminal trials, not claims for damages against arresting officers." *Phillips*, 668 F.3d at 915. A defendant thus "does not have a damages remedy for wrongful arrest under § 1983 and the fourth amendment" stemming from an unduly suggestive identification. *Id.* at 917. Moreover, evidence "need not be admissible at trial in order to support a finding of probable cause." *Id.* at 915. Accordingly, the Court may properly consider show-up identifications that are otherwise inadmissible at trial when evaluating probable cause. Regardless, Goewey and Deputy Miller's show-up identifications are sufficiently reliable for the reasons discussed and thus would likely be admissible.

12

Watkins's driver's license photo to their recollection of Buzzy's face. The identifications were made separately, and are properly viewed as two, instead of one, show-ups. *See United States v. Williams*, 522 F.3d 809, 812 (7th Cir. 2008) (criticizing defendant's counsel for briefing appeal as if only one identification was at issue when "[t]hree witnesses identified the same person at the lineup"). And the fact that Deputy Miller and Goewey's identifications were consistent increases, not decreases, their reliability. *Id.* (Even if "the risk that any one identification would be mistaken is substantial, the risk that multiple witnesses would make the same error is smaller.").

In any event, a single show-up is sufficient to establish probable cause when the "totality of the circumstances" establishes the identification's reliability. *See Manning v. City of Blue Island*, 2015 WL 1538864, at *6 (N.D. Ill. Mar. 31, 2015). For example, the show-up in *Manning* established probable cause because the witness, who had minutes before observed the robbers at close range under lights, similarly observed the "well-lit [suspect] from an unobstructed, relatively close view." *Id*; *see also Brodnicki v. City of Omaha*, 75 F.3d 1261, 1265–66 (8th Cir. 1996) (show-up identification occurring "on the same afternoon as the alleged incident" after "ample opportunity to observe" the suspect from an unobstructed view established probable cause). Likewise, the circumstances surrounding the show-up here demonstrate reliability: Deputy Miller and Goewey observed Watkins at close quarters, in broad daylight, shortly before making their identifications.

Watkins insists, however, that he "was not the individual that Deputy Miller pulled over on February 15, 2018." (Dkt. 60 at 7.) Accepting Watkins's theory means

13

that Buzzy coincidentally provided Watkins's name, and Watkins looked similar enough to Buzzy to fool Deputy Miller and Goewey, who both saw Buzzy's face in broad daylight shortly before making their identifications. Such an error occurred, says Watkins, because Goewey and Deputy Miller had to compare their memories of Buzzy's appearance to a single photo of Watkins's face.[12]

Of course, police "often confront the limits of human memory and facial recognition" when making identifications. *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). But "identifications, even if questionable, [are] enough to give defendants probable cause to arrest." *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 351 (7th Cir. 2019). Although Watkins's theory is plausible (and proved successful at trial where the government had to prove guilt beyond a reasonable doubt), Goewey, when determining probable cause, was not required to strictly construe the evidence—and his own memory—in Watkins's favor. *See Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013) (in determining probable cause, police are not required "to use the rules

---

[12] Illinois State Police policy supposedly requires that show-ups be performed in person (instead of by photograph), and that video and audio equipment be used when practical. (Dkt. 60 at 6.) Goewey performed his show-up using a photograph, and Deputy Miller did not activate her body camera during the traffic stop. (*Id.*) Watkins argues that these violations of department policy negate probable cause. Violations of police department policy, however, are irrelevant to the constitutional analysis. As the Seventh Circuit has consistently held, Section 1983 "protects defendants from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'" *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). Put another way, "the violation of police regulations or even state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id.*; *see McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984) (If "police officers have probable cause to make an arrest, . . . it is immaterial to the constitutionality of their conduct that the arrest may have violated state law.").

for summary judgment and draw inferences in favor of the suspects.").[13]

For all of these reasons, Goewey had probable cause to arrest Watkins. Accordingly, summary judgment in Defendants' favor is warranted on this basis alone.

### B. Goewey is Entitled to Qualified Immunity

Even if Goewey was mistaken about the existence of probable cause, however, his mistake was reasonable, and he is entitled to qualified immunity. Watkins "bears the burden of defeating" Goewey's qualified immunity defense "either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott*, 705 F.3d at 723–24. As the Supreme Court has "repeatedly stressed," courts should not analogize to cases "at a high level of generality." *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Qualified immunity can only be defeated when the plaintiff identifies "a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Watkins argues that clearly established law required Goewey to conduct further investigation into Buzzy's identity before signing the criminal complaint. But Watkins fails to identify a case holding that an officer is required to conduct further

---

[13] Although not raised by Defendants, Watkins's grand jury indictment is "prima facie evidence of probable cause" that may only be rebutted with evidence that Goewey "knew [he] lacked probable cause to arrest" Watkins. *Coleman*, 925 F.3d at 351. The lack of evidence regarding Goewey's knowledge would, if raised, be an additional ground for concluding that probable cause existed.

15

investigation after he bought narcotics undercover and obtained *two* photographic show-up identifications of the suspect, including one made by himself. To be sure, Watkins relies on *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985). *Moore* involved a dispute over the amount owed on a restaurant bill. *Id.* at 1345. Based only on the manager of the restaurant's accusation that diners did not pay for a meal, police officers arrested the diners in their homes without any investigation. *Id.* As the Seventh Circuit later held, because it was not clear that a crime had even been committed, the officers should have conducted further investigation: the dispute "could almost be characterized as . . . whether a breach of contract occurred between the parties as to services and food to be provided." *Id.* There was no dispute in *Moore* as to the identities of the diners. Conversely, there is no dispute here whether a crime was committed—Goewey personally participated in the undercover drug purchases. There is, however, disagreement regarding the identity of the drug dealer. *Moore* is thus not closely analogous.

      Watkins also attempts to defeat qualified immunity by repeating his criticisms of the identification procedures. Watkins complains that the identifications hinged on "an old photograph" and "memory"; Goewey "knew that the suspect was using a nickname," yet Goewey did not prepare "for the possibility of the suspect providing an alias or fake name to Deputy Miller"; and Deputy Miller failed "to inquire into basic facts (*e.g.*, where the suspect was going, where he was traveling from, his current address)" that would have uncovered the driver's true identity. (Dkt. 60 at 8–10.) Watkins, however, cites no cases which hold that an officer lacked probable cause

16

after conducting an identification in an analogous manner. And the identification procedures are a far cry from egregious and unreasonable conduct necessary for defeating qualified immunity. *See Palmore-Lett v. Vill. of Schaumburg*, 2012 WL 5269336, *7 (N.D. Ill. 2012) (police officer entitled to qualified immunity after mistakenly arresting man who looked similar to suspect's driver's license photo).

      \*    \*    \*

Because probable cause existed and Goewey is otherwise entitled to qualified immunity, summary judgment is granted for Goewey on Counts I and II. Summary judgment is also granted for MANS on Count III because there is no duty to indemnify in "the absence of individual employee liability." *Karalyos v. Bd. of Educ. of Lake Forest Cmty. High Sch. Dist. 115*, 788 F. Supp. 2d 727, 734 (N.D. Ill. 2011).

## IV. CONCLUSION

Defendants' motion for summary judgment (Dkt. 44) is granted.

SO ORDERED in No. 20-cv-05072.

Date: September 29, 2023

                JOHN F. KNESS
                United States District Judge